# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

FREDERICK P. BRODER, )
)
        Plaintiff, )
)
v. ) Case No. CIV-07-346-RAW-SPS
)
MICHAEL J. ASTRUE, )
Commissioner of the Social )
Security Administration, )
)
        Defendant. )

## REPORT AND RECOMMENDATION

The claimant Frederick P. Broder requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision should be REVERSED and REMANDED.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and

work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term substantial evidence has been interpreted by the United States Supreme Court to require "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The Court may not reweigh the evidence nor substitute its discretion for that of the agency. *Casias v.*

---

[1] Step one requires the claimant to establish he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if his impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), he is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that he lacks the residual functional capacity (RFC) to return to his past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work the claimant can perform existing in significant numbers in the national economy, taking into account his age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on September 1, 1946, and was 59 years old at the time of the most recent administrative hearing. He has a high school education and previously worked as a cameraman/stripper for a print shop. The claimant alleges he has been unable to work since June 16, 2000, because of post-traumatic stress disorder ("PTSD"), osteoarthritis, high blood pressure, acid reflux, and a brain lesion.

## Procedural History

On June 27, 2000, the claimant filed an application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401- 434, which application was denied. After a hearing, ALJ Michael Kirkpatrick issued a decision finding the claimant was not disabled. The claimant appealed and the decision was affirmed by this Court in Case No. CIV-02-487-S (E.D. Okla. 2002). When the claimant appealed the decision to the Tenth Circuit Court of Appeals, the Commissioner filed a Stipulated Motion to Vacate District Court Order and Remand for Further Administrative Proceedings. The Circuit remanded the decision, and it was vacated by this Court and remanded to the ALJ by the Appeals Council on September 25, 2004. ALJ Kirkpatrick conducted a supplemental hearing and found the

claimant was not disabled on December 13, 2005. The Appeals Council denied review, so the ALJ's decision represents the Commissioner's final decision for purposes of this appeal. 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform medium work, *i. e.*, that he could lift and/or carry fifty pounds occasionally and twenty-five pounds frequently; stand and/or walk for six hours in an eight-hour workday; and sit for six hours in an eight-hour workday (Tr. 20). The claimant could perform "simple, routine tasks but not detailed or complex tasks . . . [and] require[d] a task-oriented job which d[id] not involve interaction with the general public, although he c[ould] interact appropriately with supervisors and co-workers." (Tr. 355-56). The ALJ concluded that although the claimant could not return to his past relevant work, he was not disabled because there was work he could perform existing in significant numbers in the regional and national economies, *e. g.*, cleaner, packer, and manufacturing laborer (Tr. 366).

## Review

The claimant contends that the ALJ erred: (i) by failing to properly evaluate the opinion of treating psychiatrist Dr. Trang T. Ma, M.D.; (ii) by failing to properly consider his disability rating from the Veteran's Administration for his mental impairments; and, (iii)

by failing to properly consider the opinions of his licensed counselors. The undersigned Magistrate Judge finds the second and third contentions persuasive.

The record reveals that the claimant, a Vietnam war veteran, suffered from PTSD for years but was not diagnosed with the disorder until April 1999. The VA initially assessed the claimant as 30 percent disabled because of his PTSD (Tr. 137), but he was increased to 50 percent disability in September 1999 (Tr. 98-99). In February 2001, the claimant's disability rating was increased to 100 percent disabled, and the finding applied retroactively to June 2000 (Tr. 293-96). The claimant again was assigned a 100 percent disability rating in August 2001 (Tr. 287).

The claimant was treated for PTSD, depression and anxiety by staff psychiatrist Trang T. Ma, M.D., at the Bonham VA Medical Center from October 1, 1999, through March 11, 2005 (Tr. 127, 170-71, 173-74, 302, 453, 460, 469-70, 472-73, 485, 489, 493-96, 507, 513, 518, 526, 555, 608). In November 2004, Dr. Ma explained in a letter to the ALJ why the claimant's Global Assessment of Functioning ("GAF") score had fallen from 45 to 40 in January 2001. She indicated the claimant suffered from PTSD and chronic depression, which affected his "ability to function significantly making it difficult for him to cope with stress and to deal with people. He is frequently having nightmares and flashbacks, also irritability, hypervigilant and avoiding people." She explained the claimant "was feeling overwhelmed by the stress from his own health, his wife's health (she later died) and his recent motor vehicle accident in which his car was totaled." (Tr. 401). In March 2005, Dr. Ma completed

a mental medical source statement wherein she determined the claimant had several marked limitations in understanding and memory, sustained concentration and persistence, social interaction, and adaptation (Tr. 571-72).[2]

The claimant attended group therapy for his PTSD and was followed by licensed professional counselors Linda Monroe and Wanda Welch. On May 14, 2001, Ms. Monroe confirmed that the claimant had been attending a weekly PTSD group meeting for a year. She noted that the claimant had tried working but was unable to because of his anxiety level. He reported "feelings of purposelessness, and isolation from family members . . . [and] feelings of being punished, extreme anxiety during anniversary dates, severe guilt feelings, intense nightmares, poor sleep patterns sleeping two or three hours per night, and homicidal ideations with no plan to complete." The claimant had problems trusting non-military leaders and experienced periods of hypervigilance/hyperarousal and patterns of isolation, *e. g.*, the claimant was described as "aloof" and "withdrawn" during group sessions. The claimant

---

[2] Dr. Ma found the claimant had marked limitations in the following areas: (i) the ability to remember locations and work-like procedures; (ii) the ability to understand, remember and carry out detailed instructions; (iii) the ability to maintain attention and concentration for extended periods; (iv) the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (v) the ability to sustain an ordinary routine without special supervision; (vi) the ability to work in coordination with or proximity to others without being distracted by them; (vii) the ability to complete a normal work day and workweek without interruptions from psychologically based symptoms; (viii) the ability to interact appropriately with the public; (ix) the ability to accept instructions and respond appropriately to criticism from supervisors and get along with coworkers or peers without distracting them; and, (x) the ability to respond to changes in the work setting, be aware of hazards and take precautions, travel in unfamiliar places or use public transportation, and set realistic goals or make plans independently of others (Tr. 571-72).

reported increased anxiety. Ms. Monroe had seen no improvement in the claimant's behaviors during his therapy and believed his PTSD "remain[ed] static." (Tr. 288). In December 2004, Ms. Welch indicated that the claimant had been attending group counseling sessions for his PTSD for the past four to five years. She noted that the claimant did not trust people and did not like being around them. The claimant was withdrawn and experienced nightmares several times per week. Based on his condition and disability rating of 100 percent, Ms. Welch believed the claimant qualified for social security disability (Tr. 528). In March 2005, Ms. Welch noted in a letter that in the past five years the claimant had attended between 250 and 275 group meetings for PTSD (Tr. 573).

The ALJ's treatment of the claimant's mental impairments was deficient for two reasons. First, although the ALJ acknowledged that the claimant suffered from PTSD, that he received treatment for several years for the condition through the Bonham VA Medical Center, and that he was assigned a 100 percent disability rating based on the condition, he did not specifically explain the weight he assigned to the disability rating. *See, e. g., Baca v. Department of Health & Human Services*, 5 F.3d 476, 480 (10th Cir. 1993) ("'Although findings by other agencies are not binding on the Secretary, they are entitled to weight and must be considered.'"), *quoting Fowler v. Califano*, 596 F.2d 600, 603 (3d Cir. 1979). *See also Grogan v. Barnhart*, 399 F.3d 1257, 1262-63 (10th Cir. 2005) (noting that another agency's determination is not binding, but "it is evidence that the ALJ must consider and explain why he did not find it persuasive.") [citations omitted]. The ALJ should have

discussed the significance of the rating in his decision. *See, e. g., Kanelakos v. Astrue*, 249 Fed. Appx. 6, 8 (10th Cir. 2007) ("[T]he ALJ mentioned the VA rating and appropriately stated that the SSA and VA standards differ. But he completely 'fail[ed] to discuss the significance of the VA's disability evaluation.'") [unpublished opinion], *quoting Grogan*, 399 F.3d at 1263.

Second, the ALJ mentioned the claimant's group therapy with Ms. Monroe and Ms. Welch and indicated that "[a]lthough the information Mmes. Monroe and Welch provided (as an 'other source') is relevant evidence which may be helpful to learn more about the claimant's condition, the undersigned is not required to give controlling weight, and has not given substantial weight to their opinions." (Tr. 358). *See, e. g., Bowman v. Astrue*, 511 F.3d 1270, 1275 n.2 (10th Cir. 2008) (noting the value in distinguishing between "acceptable medical sources" and "other sources" is that "'[i]nformation from . . . other [medical] sources cannot establish the existence of a medically determinable impairment [and] only acceptable medical sources can give . . . medical opinions' and 'be considered treating sources . . . whose medical opinions may be entitled to controlling weight.'"), *quoting* Soc. Sec. Rul. 06-03p, at *2. But the ALJ did not specifically discuss the findings of Ms. Monroe or Ms. Welch, *e. g.*, Ms. Monroe's opinions that the claimant suffered from an increased anxiety level, poor sleep and nightmares, severe guilt feelings, homicidal ideations, problems trusting non-military leaders, periods of hypervigilance/hyperarousal, seemed "aloof" and "withdrawn," and PTSD "remain[ed] static (Tr. 288) or Ms. Welch's notations that the

claimant did not trust people or like being around them, was withdrawn, and experienced nightmares several times per week (Tr. 528), with regard to the severity of the claimant's PTSD or its functional effects. *See, e. g., Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007) (noting that other source opinions should be evaluated with the relevant evidence "'on key issues such as impairment severity and functional effects'" and by considering the 20 C.F.R. § 404.1527 factors in determining the weight of these opinions), *quoting* Soc. Sec. Rul. 06-03p, 2006 WL 2329939, at *3-4. *See also Bowman*, 511 F.3d at 1274-75. The ALJ also did not evaluate the opinions within the confines of Social Security Ruling 06-03p, *see Frantz*, 509 F.3d at 1302 (noting that SSR 06-03p "specifies that the factors for weighing the opinions of acceptable medical sources set out in 20 C.F.R. § 404.1527(d) . . . apply equally to all opinions from medical sources who are not 'acceptable medical sources' as well as from 'other sources' [and] instructs the adjudicator to explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion . . . allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.") [internal quotations omitted],[3] and apply the following familiar factors: (i) the length of the treatment relationship and the frequency of examination;

---

[3] The ALJ made his decision prior to the issuance of Social Security Ruling 06-03p, but the ruling has been applied retroactively. *See Frantz*, 509 F.3d at 1302 (discussing whether SSR 06-03p should be applied retroactively and noting that the ruling was "a clarification of existing policy and not a policy change" and that without "the benefit of the Ruling[, the Court] cannot determine whether [the opinion evidence from the other sources] could have led to a different result had the ALJ assessed it with reference to the new Ruling.").

(ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree too which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003) [quotation marks omitted], *citing Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001). The ALJ made no reference to the factors and rejected the opinions of Ms. Monroe and Ms. Welch primarily because they were not acceptable medical sources. This error was significant because their opinions were somewhat consistent with the opinions of treating psychiatrist Dr. Ma.[4]

Accordingly, the decision of the Commissioner should be reversed and the case remanded to the ALJ for further analysis of the claimant's mental impairments. On remand, if the ALJ concludes that the claimant suffers from further functional limitations, he should

---

[4] The ALJ appears to have adopted the opinions of the one-time mental health consultative examiners over that of the claimant's treating psychiatrist Dr. Ma (Tr. 359-61). A treating physician's opinion generally is favored over an opinion offered by a consulting physician, *see Reid v. Chater*, 71 F.3d 372, 374 (10th Cir. 1995), *citing Talbot v. Heckler*, 814 F.2d 1456, 1463 (10th Cir. 1987), unless the treating physician's opinion "is brief, conclusory, and unsupported by medical evidence[.]" *Frey v. Bowen*, 816 F.2d 508, 513 (10th Cir. 1987). After considering the opinions of Ms. Monroe and Ms. Welch more closely, the ALJ should decide whether the opinions from the consultative examiners still outweigh Dr. Ma's opinions. *See Reyes v. Bowen*, 845 F.2d 242, 245 (10th Cir. 1988) (noting that if a treating physician's opinion is inconsistent with other evidence, the ALJ should examine the other evidence and determine whether it outweighs the treating physician's opinion, not the other way around).

include them in an appropriate RFC, and then determine what work, if any, the claimant can perform and ultimately whether he is disabled.

## Conclusion

The undersigned Magistrate Judge finds that correct legal standards were not applied by the ALJ and the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the Magistrate Judge RECOMMENDS that the ruling of the Commissioner of the Social Security Administration be REVERSED and REMANDED for further proceedings as set forth above. Any objections to this Report and Recommendation must be filed within ten days.

**DATED** this 2nd day of February, 2009.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**